UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENNEL EDWARD MILES, JR.,<br><br>Petitioner,<br><br>v.<br><br>BRYAN D. PHILLIPS,<br><br>Respondent. | No. 2:19-cv-00377-DAD-DMC<br><br>ORDER GRANTING RESPONDENT'S<br>MOTION TO STAY PENDING APPEAL<br><br>(Doc. No. 89) |

This matter came before the court on February 2, 2026 for a hearing on respondent's motion for stay pending appeal. (Doc. No. 89.) Attorney Elizabeth H. Richardson-Royer appeared on behalf of petitioner and California Deputy Attorney General Tami M. Krenzin appeared on behalf of respondent. For the reasons explained below, the court will grant respondent's motion for a stay pending appeal.

**BACKGROUND**

On April 3, 2019, petitioner filed a petition for writ of habeas corpus initiating this action and challenging his 2012 judgement of conviction entered in the Sacramento County Superior Court. (Doc. No. 1.) On November 29, 2021, petitioner filed the operative first amended petition for writ of habeas corpus. (Doc. No. 47.) In that amended petition, petitioner asserted four separate grounds for federal habeas relief: (1) his trial counsel provided ineffective assistance of counsel when litigating a pretrial motion to exclude testimony; (2) the prosecution withheld

1

material exculpatory evidence, as well as impeachment evidence, in violation of petitioner's due process rights as explained in *Brady v. Maryland*, 373 U.S. 83 (1963); (3) admission of witness Brittany Ashcraft's testimony at his 2012 trial regarding a purported phone call between petitioner and Ashcraft's boyfriend violated petitioner's right to due process; and (4) due to the cumulative effect of the errors at petitioner's trial. (*Id.* at ¶¶ 113–47.)

On September 3, 2025, the assigned magistrate judge issued amended findings and recommendations recommending that the first amended petition be granted as to petitioner's third claim for relief. (Doc. No. 74.) In this regard, the assigned magistrate judge found that petitioner had failed to show the requisite prejudice required to assert an ineffective assistance of counsel claim and that petitioner's *Brady* claim amounted to a delayed disclosure claim that did not merit habeas relief. (*Id.* at 14–19.) However, the magistrate judge concluded that the admission of Ashcraft's testimony, which according to the magistrate judge comprised "the sole evidence against Petitioner," was based on an unreasonable determination of the facts and was accordingly not subject to Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") deference. (*Id.* at 22–29.) The magistrate judge therefore concluded that the state court's admission of that testimony violated petitioner's right to due process and rendered his trial fundamentally unfair. (*Id.* at 30–32.) On October 3, 2025, respondent filed objections to those findings and recommendations arguing that the magistrate judge erred by considering the reliability of the testimony at issue, asserting that admission of unreliable evidence alone cannot constitute a due process violation. (Doc. No. 80 at 4–6.) On December 31, 2025, the previously-assigned district judge adopted the findings and recommendations, granted petitioner's petition for writ of habeas corpus, and ordered respondent to release petitioner within thirty days of the date of entry of that order or, in the alternative, file a written notice of election to retry petitioner and within sixty days of the filing of that notice commence the retrial. (Doc. No. 86 at 2.)

On January 14, 2026, respondent filed a motion to stay the previously-assigned district judge's order pending his appeal to the Ninth Circuit and filed a notice of appeal. (Doc. Nos. 88, 89.) In that motion, respondent also requests the alternative relief of a temporary stay to permit

/////

2

respondent to request a stay pending appeal from the Ninth Circuit. (Doc. No. 89 at 4.)[1]  On January 23, 2026, the court directed petitioner to file an opposition to the motion for a stay no later than January 28, 2026. (Doc. No. 94.)  On January 26, 2026, the parties filed a joint stipulation regarding a briefing schedule on the pending motion, which the court granted on January 27, 2026 and accordingly extended the time in which respondent could file a notice of intent to retry petitioner. (Doc. No. 100.)  On January 27, 2026, petitioner filed his opposition to the motion to stay and a counter-motion for immediate release. (Doc. No. 101.)  On January 28, 2026, respondent filed his reply and an opposition to the motion for immediate release and on January 30, 2026, petitioner filed a reply thereto. (Doc. Nos. 102, 103.)

**LEGAL STANDARD**

"The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner" within a certain period of time. *Herrera v. Collins*, 506 U.S. 390, 403 (1993).

Pursuant to Rule 23 of the Federal Rules of Appellate Procedure, "[w]hile a decision ordering the release of a prisoner is under review, the prisoner must—unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise—be released on personal recognizance, with or without surety." Fed. R. App. P. 23(c).  "[I]n deciding whether to stay pending appeal a district court order granting relief to a habeas petitioner," federal courts apply Rule 23(c), which "undoubtedly creates a presumption of release from custody in such cases, but that presumption may be overcome if the judge rendering the decision, or an appellate court or judge, 'otherwise orders.'"

/////

/////

/////

/////

/////

___

[1]  On January 15, 2026, this case was re-assigned to the undersigned following the retirement of Judge Mueller.

*Hilton v. Braunskill*, 481 U.S. 770, 774 (1987).[2]  "[A] court making an initial custody determination under Rule 23(c) should be guided not only by the language of the Rule itself but also by the factors traditionally considered in deciding whether to stay a judgment in a civil case." *Id.* at 777 (noting that the presumption of release "may be overcome if the traditional stay factors tip the balance against it").

In civil cases, "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009).  A stay "is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal quotation and brackets omitted).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

In exercising discretion to grant or deny a stay in civil cases, courts consider the following factors:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton*, 481 U.S. at 776).  The Ninth Circuit has held that courts should apply these factors flexibly when analyzing stay requests.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (reasoning, in part, that "stays are typically less coercive and less disruptive than are injunctions").  To apply the factors flexibly, courts employ a "sliding scale," meaning that the factors are balanced so that "a stronger showing of one element may offset a weaker showing of another." *Id.* at 964–66 (quoting in part *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)); *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, No. 3:14-cv-02857-WHO, 2015 WL 674962, at *2 (N.D. Cal. Feb. 17, 2015).

---

[2]  As the Ninth Circuit has explained:

> The plain language of Rule 23 gives the district court jurisdiction concurrent with the appeals court over the custody of a habeas petitioner.  As the Supreme Court has made clear, a district court has broad discretion in conditioning a judgment granting habeas relief, including whether or not to release a prisoner pending appeal.

*Stein v. Wood*, 127 F.3d 1187, 1190 (9th Cir. 1997) (citing *Hilton*, 481 U.S. at 775).

4

Under this sliding scale approach,

> a moving party who cannot show a strong likelihood of success on the merits may nonetheless be entitled to a stay where he shows that his appeal "raises serious legal questions, or has a reasonable probability or fair prospect of success." *Leiva-Perez*, 640 F.3d at 971. A party satisfying this lower threshold under the first *Nken* factor is not required to show that it is more likely than not to win on the merits, but it must demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor.

*Kum Tat*, 2015 WL 674962, at *2 (cleaned up).

In federal habeas corpus cases, "[t]he most important factor is the first, that is, whether the state has made a strong showing of likely success on the merits of its appeal of the district court's decision." *Haggard v. Curry*, 631 F.3d 931, 935 (9th Cir. 2010). "Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." *Hilton*, 481 U.S. at 778. However, "[w]here the State's showing on the merits falls below this level, the preference for release should control." *Id.*

In addition, courts may also consider "the possibility of flight," the "risk that the prisoner will pose a danger to the public if released," and "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal." *Id.* at 777.

## DISCUSSION

**A.      Likelihood of Appellate Success (First *Hilton* Factor)**

Respondent argues that he is likely to prevail on appeal because the Supreme Court has previously rejected the contention that "potential unreliability" of admitted testimony standing alone can constitute a due process violation. (Doc. No. 89 at 2–3.) In his motion, respondent largely repeats the argument previously rejected by both the assigned magistrate judge and the previously-assigned district judge. (*Compare* Doc. No. 89 *with* Doc. No. 80 at 4–6.) In response, petitioner first argues that merely restating arguments raised in prior briefing is insufficient to establish a likelihood of appellate success. (Doc. No. 101 at 9–10.) Petitioner also contends that, even if repetition of an argument could demonstrate a substantial case for appeal, Supreme Court

5

precedent has established that admission of evidence that is "so unreliable and prejudicial" that it renders the underlying trial "fundamentally unfair" violates a defendant's due process rights.  (*Id.* at 10–11.)

First, the court observes that respondent's position is merely that he has demonstrated that "there is a substantial case on the merits[,]" which is lesser showing than that of a "strong likelihood of success."  *See Arciga v. Frauenheim*, No. 1:15-cv-01372-DAD-CDB (HC), 2023 WL 144199, at *3–4 (E.D. Cal. Jan. 10, 2023) (discussing the showing required under Ninth Circuit precedent for a motion to stay habeas relief).  Indeed, at the hearing on the pending motion, respondent clarified that his position is that he has shown a substantial case on the merits and that consideration of the remaining *Hilton* factors weigh heavily in his favor.

The amended findings and recommendations found that the admission of Ashcraft's testimony violated petitioner's right to due process on the grounds that it was the sole evidence against petitioner and was so unreliable that its admission rendered petitioner's trial fundamentally unfair.  (Doc. No. 74 at 32.)  Respondent argues that the purported unreliability of the evidence cannot, standing alone, serve as a basis for the finding of a due process violation.  (Doc. No. 89 at 2–3.)  Specifically, respondent maintains that "when trial testimony is admissible under state evidentiary rules, and a defendant is able to confront and cross-examine a witness, due process [does not require] anything more than a credibility determination by the trier of fact."  (Doc. No. 102 at 2.)  Petitioner counters that the admission of Ashcraft's testimony was so prejudicial that due process was violated by its admission.  (Doc. No. 101-1 at 10–11.)  At the hearing counsel clarified that petitioner's position is that due process was violated even though Ashcraft's testimony was admissible under the California Evidence Code.[3]

---

[3]  In this regard, petitioner's relies on *Estelle v. McGuire*, 502 U.S. 62, 68–70 (1991) and *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996).  (Doc. No. 101-1 at 11.)  However, both of those cases discuss the possibility that erroneous evidentiary rulings could result in a violation of due process, rather than the possibility that a correct evidentiary ruling under state law may nevertheless constitute a violation of due process.  *Estelle*, 502 U.S. at 68–70 (holding that the evidence at issue was relevant and properly admitted and that there was therefore no due process violation); *Montana*, 518 U.S. at 53 (summarizing earlier case law regarding erroneous evidentiary rulings).

The court concludes that respondent has demonstrated that his appeal raises a serious legal question. Petitioner is correct that the Supreme Court has found that due process bars "the introduction of evidence 'that is so unduly prejudicial that it renders the trial fundamentally unfair.'" *Andrew v. White*, 604 U.S. 86, 92–93 (2025) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). However, the Supreme Court in *Andrew* addressed the state appellate court's ruling that the erroneous admission of irrelevant evidence at trial constituted harmless error. *Id.* at 90. Here, on the other hand, petitioner's position is that even if Ashcraft's testimony was properly admitted under the California Evidence Code, its admission still violated his due process rights.

Though not cited by respondent in his motion to stay, the undersigned has reviewed the recent decision in *Bredemeier v. Phillips*, 786 F. Supp. 3d 1300 (C.D. Cal. June 16, 2025), in which the district court addressed a similar contention as that which has been presented by petitioner in this case. There, the district court observed that "the Due Process Clause (properly understood) sets only the metes and bounds of a fair trial; it doesn't impose per se constitutional constraints on ordinary evidentiary rulings by state trial courts, especially since they are called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence." *Bredemeier*, 786 F. Supp. 3d at 1320 (internal quotation marks omitted) (quoting *Crane v. Kentucky*, 476 U.S. 683, 689 (1986)). Here, the findings and recommendations and the district judge's order adopting those findings and recommendations treated petitioner's case as an unusual one in which evidence may have been properly admitted under the California Evidence Code but its admission nonetheless violated due process. In light of the relevant discussion by the district court in *Bredemeier*, the undersigned concludes that reasonable jurists may differ as to the appropriate resolution of this unique legal issue.[4] The court therefore finds that respondent's appeal presents a serious legal question upon which respondent may prevail. *See Sifuentes v. Brazelton*, No. 09-cv-02902-PJH, 2014 WL 186867, at *1 (N.D. Cal. Jan. 16, 2014) (finding that

---

[4] In the undersigned's view it could be credibly argued that respondent's appeal presents a substantial case on the merits and perhaps even one upon which respondent has some degree of likelihood of success.

7

a showing that reasonable jurists may differ as to the assessment of a habeas claim is sufficient to support a "substantial probability that respondent may succeed on appeal").

The court therefore finds that consideration of the first *Hilton* factor—the most important factor—weighs modestly in favor of the granting of a stay. See *Hilton*, 481 U.S. at 778 ("Where the State establishes that it has a strong likelihood of success on appeal, *or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release*.") (emphasis added).

## B.    Remaining Factors

### 1.    Irreparable Harm to Respondent

Respondent argues in summary fashion that the state has an interest in "continuing custody and rehabilitation" which is strengthened here by the fact that petitioner was sentenced to a consecutive indeterminate term of life without the possibility of parole following his determinate sentence. (Doc. No. 89 at 3–4.) Respondent contends that the length of petitioner's sentence standing alone demonstrates irreparable injury were a stay not to issue. (*Id.*) Petitioner argues that respondent cannot have a defensible interest in continued incarceration because the court has granted habeas relief and accordingly found that his conviction was obtained through a constitutional violation. (Doc. No. 101-1 at 13–14.)

It is true that "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Hilton*, 481 U.S. at 777. The undersigned has previously held that this "interest alone does not establish irreparable injury[.]" *Arciga*, 2023 WL 144199, at *5. As another district court has pointed out, this basis for irreparable injury "could be argued in any habeas proceeding when a district court's decision ordering release or a new trial is appealed" and accordingly cannot alone overcome "the presumption of release from custody[.]" *Naranjo v. Beard*, No. 11-cv-01487-WQH-PCL, 2013 WL 3389477, at *6 (S.D. Cal. July 8, 2013).

/////

8

Nevertheless, though not argued here by respondent, it is apparent that there are other costs associated with the mandating of a re-trial of petitioner before the Ninth Circuit Court of Appeals has had the opportunity to consider the unique legal issue posed by this case. As one district court has observed, "[i]t makes little sense for the State to be required to immediately conduct a murder trial if there is any possibility the trial could be mooted by a reversal of this Court's order on appeal." *Franklin v. Duncan*, 891 F. Supp. 516, 520 (N.D. Cal. 1995). Here, it appears obvious that if respondent filed an election to retry petitioner, the state's resources would have to be expended to locate, contact, and potentially transport witnesses and evidence regarding events that occurred over 15 years ago. *See Becker v. Martel*, No. 10-cv-01209-W-AJB, 2011 WL 2181361, at *2 (S.D. Cal. June 3, 2011) (finding that the expenditure of state resources to conduct a retrial constituted irreparable injury to the state); *see also Sifuentes*, 2014 WL 186867, at *2 ("Respondent has established that if a stay is denied, petitioner must be retried during the pendency of the appeal, requiring substantial effort and use of public resources to locate witnesses and exhibits even before a final decision is issued by the court of appeals."). Accordingly, the court concludes that the state would face irreparable injury in the absence of a stay. Consideration of this factor weighs in favor of granting a stay.

    2.    <u>Irreparable Harm to Petitioner</u>

Respondent argues that petitioner's interest in his release, while substantial, is weakened because of his significant criminal history and the risk of flight posed were he to be released. (Doc. No. 89 at 4.) Petitioner argues that his significant interest in release, particularly in light of having spent 16 years in prison based on what this court has found to be a constitutionally defective conviction, weighs heavily against granting a stay in this case. (Doc. No. 101-1 at 12–13.) "[C]ontinuing Petitioner's incarceration after a successful habeas petition would not only constitute a substantial injury to Petitioner but also extend the constitutional violation Petitioner has suffered." *Perez v. Hartley*, No. 1:08-cv-01665-LJO-JMD, 2010 WL 3505062, at *2 (E.D. Cal. Sept. 7, 2010); *see also Arciga*, 2023 WL 144199, at *5 (finding that the petitioner's interest in his release was significant in light of spending 12 years in prison under a constitutionally defective conviction). However, "[u]nlike a pretrial arrestee, a state habeas petitioner has been

9

adjudged guilty beyond a reasonable doubt by a judge or jury, and this adjudication of guilt has been upheld by the appellate courts of the state." *Sifuentes*, 2014 WL 186867, at *2 (finding that the petitioner's interest in release weighed against the granting of respondent's motion for a stay, but not heavily in light of the petitioner's conviction by a jury).  Accordingly, in light of petitioner's substantial interest in release, the court finds that this factor weighs somewhat against the granting of a stay.

           3.     Public Interest

As to the public interest factor, respondent argues that petitioner poses a flight risk if released and a danger to the public based on his prior serious felony conviction and the conviction at issue in this action.  (Doc. No. 89 at 3–4.)  Petitioner argues that he has strong ties to the Sacramento community, particularly due to his close relationship with his father.  (Doc. No. 101-1 at 15–16.)  Petitioner also argues that any flight risk or danger to the community that he poses can be mitigated through imposition of conditions of release such as electronic monitoring.  (*Id.* at 16.)

It is certainly true that "[m]urder is an extremely serious charge which by its nature would seem to pose a heightened risk of flight." *Franklin*, 891 F. Supp. at 521.  However, respondent has not made any particularized showing that petitioner would constitute a flight risk or danger to the community under any release conditions that could be fashioned.  *See id.* ("The State, however, has presented no evidence that Franklin poses a particularized flight risk if sufficient surety is set."); *see also Stevens v. Carlin*, No. 3:14-cv-00403-REB, 2018 WL 1596872, at *2 (D. Idaho Apr. 2, 2018) (finding that the petitioner was not a flight risk or a danger in part because the respondent failed to provide specific details supporting the contention that he was); *Douglas v. Singh*, No. 11-cv-05370-EMC, 2013 WL 2645175, at *5 (N.D. Cal. June 12, 2013) ("Other than the convictions for the offenses herein, the State has not made any particular showing of flight risk or danger to community were the stay denied[.]").  Nevertheless, the undersigned concludes that petitioner's criminal history and the extended length of his remaining sentence support a finding that, if released, petitioner may pose a risk of flight or of danger to the community.  *See Boutte v. Biter*, No. 2:07-cv-01508-AK, 2012 WL 5880494, at *3 (E.D. Cal.

10

Nov. 21, 2012) (finding that the petitioner posed a flight risk based on his criminal history); *see also Jackson v. Biter*, No. 2:14-cv-02268-MCE-DB, 2021 WL 4988871, at *3–4 (E.D. Cal. Oct. 27, 2021) ("In light of petitioner's criminal history, the length of time remaining on his sentence, and the possibility of an unnecessary retrial, the undersigned finds that the public interest weighs in favor of the imposition of a stay."), *report and recommendation adopted*, 2021 WL 5811827 (E.D. Cal. Dec. 7, 2021).

Here, petitioner has shown that he has some ties to the community, such as his father and his children. (Doc. No. 101-1 at 16.) His serious criminal history raises the specter of danger to the community and flight risk, it does not necessarily support the conclusion that no combination of release conditions could mitigate those risks. Nonetheless, on the whole, consideration of the public interest factor weighs slightly in favor of the granting of a stay.

Having concluded that the first factor weighs moderately in favor of a stay, and the second factor weighs heavily in favor of a stay while the fourth factor does not weigh against it, the court concludes that the presumption of release has been overcome by a narrow margin here. *See Haggard*, 631 F.3d at 934 (discussing the presumption of release following the granting of a habeas petition). In coming to this conclusion, the court notes that, at the hearing, counsel represented that respondent would be willing to stipulate to a condensed briefing schedule in order to expedite that appeal. The court endorses this approach.

**CONCLUSION**

For the reasons above,

1. Respondent's motion to stay (Doc. No. 89) is GRANTED;

2. Petitioner's counter-motion for immediate release (Doc. No. 101-1) is DENIED;

3. The December 31, 2025 order adopting the amended findings and recommendations (Doc. No. 86) is STAYED pending resolution of this matter on appeal; and

/////

/////

/////

11

4.      The parties are DIRECTED to file a joint status report sixty (60) days from the date of entry of this order and every sixty (60) days thereafter regarding the status of the appeal in this action.

IT IS SO ORDERED.

Dated:    **February 4, 2026**

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES DISTRICT JUDGE